## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

**AXIALL CANADA INC.**                    **CASE NO.  2:20-CV-01535**

**VERSUS**                                **JUDGE JAMES D. CAIN, JR.**

**MECS INC.**                             **MAGISTRATE JUDGE KAY**


### MEMORANDUM RULING

Before the court is a "Motion to Dismiss and Compel Arbitration or, in the alternative, Motion to Stay and Compel Arbitration" [doc. 4] filed by defendant MECS, Inc. ("MECS") under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3). Plaintiff Axiall Canada, Inc. ("Axiall Canada") opposes the motion. Doc. 9. The matter came before the court for oral argument on February 4, 2021, and the undersigned now issues this ruling.

### I.
### BACKGROUND

This suit arises from the sale of mist eliminators by MECS, a manufacturing company specializing in equipment used in the chemical manufacturing and processing industry, to Axiall Canada, which owns and operates a chlor-alkali manufacturing facility in Beauharnais, Quebec. *See* doc. 1, att. 1. Beginning in July 2019, Axiall Canada purchased 16 demisters from MECS at a total price of $525,000. *Id.* at p. 3, ¶ 4. The transactions were completed when MECS issued a proposal setting forth terms of sale, after which Axiall Canada submitted purchase orders. *See* doc. 4, att. 2; doc. 9, att. 1. MECS

then issued order acknowledgments confirming the sales.[1] *See* doc. 4, att. 3. All of these documents expressly condition contract formation on the respective parties' agreement to their general terms and conditions.[2] Doc. 4, att. 2, p. 5; doc. 4, att. 3, p. 1; doc. 9, att. 1, p. 1. Axiall Canada's terms and conditions contain a choice of law clause, stating that disputes arising from the agreement will be decided under Louisiana or Kentucky law, with venue and jurisdiction in either Lake Charles, Louisiana, or Calvert City, Kentucky. Doc. 9, att. 1, p. 4. MECS's terms and conditions contain an arbitration clause, providing that New York law will govern the dispute and that disputes arising from the transaction must be resolved by arbitration. Doc. 4, att. 2, p. 5; doc. 4, att. 3, p. 3.

Axiall Canada alleges that the demisters began to fail within weeks of installation. *Id.* It further alleges that MECS accepted the equipment for repairs but was not able to solve the problem until January 2020. *Id*. at pp. 3–4, ¶ 4. Axiall Canada then brought suit for breach of contract, breach of warranty, and redhibition against MECS in the 14th Judicial District Court, Calcasieu Parish, Louisiana, pursuant to the forum selection clause

---

[1] MECS acknowledges that, "due to the expedited nature of the transactions," the documents were not exchanged in "the usual sequence." Doc. 4, att. 1, pp. 5–6. In its opposition Axiall Canada alleged that MECS had failed to produce corresponding proposals and/or order acknowledgments for multiple transactions. *See* doc. 9 p. 3 ¶ 7. In reply, however, MECS identifies the corresponding proposal and order acknowledgment for each of these transactions. Doc. 10, pp. 3–5. It appears that only one of the identified transactions occurred without the referenced proposal, and that the arbitration language in this instance was nonetheless provided in the order acknowledgment – issued after the purchase order. *See id.* at 4 (discussing Order Acknowledgment 100868/Purchase Order 4531132323).

[2] MECS's proposal states: "Seller's acceptance of buyer's purchase order is expressly limited to and conditioned on seller's standard terms and conditions of sale stated below. Seller objects to and rejects any and all conditions in buyer's purchase order or other documents issued by buyer that are additional to or different from these terms and conditions." Doc. 4, att. 2, p. 5. Its order acknowledgment contains the same basic language, modified to cover any other documents submitted by the buyer. Doc. 4, att. 3, p. 1. Axiall Canada's purchase order states: "Your acceptance of [Axiall's] Purchase Orders or your supply of goods and services to [Axiall] indicates your irrevocable agreement to [Axiall's] General Terms and Conditions for the Purchase of Goods and Services attached." Doc. 9, att. 1, p. 1. Those terms further provide that they constitute a binding contract between purchaser and seller and that Axiall "hereby objects to and rejects any additional or modified terms proposed by Seller on which this sale would be rejected and any such proposed terms shall be deemed void." *Id.* at 4.

in the purchase orders. *Id.* at p. 3, ¶ 3. MECS removed the suit to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1.

MECS now moves to dismiss or stay the suit and compel arbitration. Doc. 4. Specifically, it argues that Axiall Canada is bound by the arbitration clause in the proposals and order acknowledgments issued by MECS. Axiall Canada opposes the motion, arguing that (1) MECS accepted by performance the terms and conditions attached to Axiall Canada's purchase orders and (2) these terms bar enforcement of the arbitration clause as a contract term between the parties. Doc. 9.

## II.
### LAW & APPLICATION

#### A. *Legal Standard*

Rule 12(b)(1) authorizes dismissal of a case for lack of subject matter jurisdiction. Because of the fundamental nature of subject matter jurisdiction, the court will consider a motion under Rule 12(b)(1) before it considers other challenges. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Rule 12(b)(3), on the other hand, allows a court to dismiss an action for improper venue. Fed. R. Civ. P. 12(b)(3). Under existing Fifth Circuit precedent, it is unclear which rule provides the best route for dismissing a suit based on an arbitration clause. *See McDonnel Grp., LLC v. Great Lakes Ins. SE, UK Branch*, 923 F.3d 427, 430 n. 5 (5th Cir. 2019) (noting that the issue remains unresolved). As this district recently noted, it is unnecessary to decide between the two approaches since the standards of review are so similar and the outcome will be the same in any case if the court finds that the arbitration clause is binding. *Murray v. Waitr Holdings, Inc.*, 2019 WL 7944814, at *3

(W.D. La. Nov. 14, 2019), *report and recommendation adopted*, 2020 WL 763038 (W.D. La. Feb. 14, 2020).

Under Rule 12(b)(3), the burden of sustaining venue rests with the plaintiff. *Bayco Prods., Inc. v. ProTorch Co., Inc.*, 2020 WL 2574626, at *4 (E.D. Tex. May 21, 2020). The court accepts as true all allegations in the complaint and resolves all conflicts in favor of the plaintiff. *Id.* However, the court may also look beyond the complaint to evidence submitted by the parties. *Id.* (citing *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009)). If a dispute is subject to mandatory grievance and arbitration procedures, then the proper course of action is usually to stay the proceedings pending arbitration. *See Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 658–59 (5th Cir. 1992). However, dismissal may be appropriate where all of the issues raised must be submitted to arbitration. *Alford v. Dean Witter Reynolds, Inc.*, 956 F.2d 1161, 1164 (5th Cir. 1992).

### B.  Application

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, controls the validity and enforcement of arbitration agreements. *Walton v. Rose Mobile Homes, LLC*, 298 F.3d 470, 473 (5th Cir. 2002). Under this law, agreements to arbitrate are enforceable except under grounds that exist "at law or in equity for revocation of any contract." 9 U.S.C. § 2. A party aggrieved by the other's alleged failure to honor an arbitration agreement may petition the district court for enforcement of the agreement. *Id.* at § 4. The court's review involves two steps: deciding (1) "whether the parties entered into *any arbitration agreement at all*" and then (2) whether the claim at issue is covered by the agreement. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original). Because the court

sits in diversity jurisdiction over this case, it applies Louisiana law to the question of whether a contract is formed and whether MECS is bound under it. *See Todd v. Steamship Mut. Underwriting Ass'n, Ltd.*, 2011 WL 1226464, at *5 (E.D. La. Mar. 28, 2011) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). In determining whether a claim falls within the scope of an arbitration agreement, the court applies the law of the state governing the contract as well as the general federal policy favoring arbitration. *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263–64 (5th Cir. 2004).

Under Louisiana law, a contract is formed by the consent of the parties as established through the offer and acceptance. La. Civ. Code art. 1927. The offer and acceptance may be made orally, in writing, or by action or inaction "clearly indicative of consent." *Id.* MECS argues that a contract incorporating all of its terms was formed under Article 1927 when Axiall Canada purchased and accepted the demisters at the agreed-upon price. It also attempts to analogize this case to arbitration clauses accepted by conduct in employment contracts, as recognized in recent cases from this circuit and district. *See Marino v. Dillard's, Inc.*, 413 F.3d 530 (5th Cir. 2006); *Murray v. Waitr Holdings, Inc.*, 2019 WL 7944814 (W.D. La. Nov. 14, 2019); *Sewell v. Waitr Holdings, Inc.*, 2020 WL 208929 (W.D. La. Jan. 13, 2020). This case, however, presents a classic "battle of the forms" scenario, in which the parties dispute the nature of their contractual relationship, the identity of the documents forming that relationship, and the terms incorporated through those documents. Additionally, it is a contract for the sale of goods containing additional terms in the acceptance and is therefore governed by Louisiana Civil Code Article 2601.

Like Uniform Commercial Code § 2-207, Louisiana Civil Code Article 2601 provides guidance for when additional terms in the acceptance may become part of the contract in an agreement between merchants. The Louisiana version generally mirrors the UCC version, but departs in a few key respects not applicable here. *See* N. Stephan Kinsella, *Smashing the Broken Mirror: The Battle of the Forms, UCC 2-207, and Louisiana's Improvements*, 53 LA. L. REV. 1555, 1556 (1993). Under Article 2601, additional terms in the acceptance may become part of a contract for sale between merchants

> unless they alter the offer materially, or the offer expressly limits the acceptance to the terms of the offer, or the offeree is notified of the offeror's objection to the additional terms within a reasonable time . . . . Additional terms alter the offer materially when their nature is such that it must be presumed that the offeror would not have contracted on those terms.

La. Civ. Code art. 2601.

MECS asserts that the claims in this matter are governed by the arbitration clauses in the proposal and order acknowledgment. Accordingly, it insists that Axiall Canada is bound thereby due to the purchase order's silence on the subject and the fact that it otherwise failed to object to the clause. Doc. 4, att. 1, pp. 10–12; doc. 10, pp. 1–3. Axiall Canada responds that either the proposal formed the offer and the purchase order the acceptance "as to the material terms on which both documents agree," or that the purchase order formed the offer and the acknowledgment the acceptance as to such terms. Doc. 9, p. 3. It maintains, under either scenario, that MECS's arbitration term was a material alteration and did not become part of the agreement. *Id.* at 3–4. It also emphasizes that it objected to the arbitration clause via the inconsistent terms – namely, the forum selection

and choice of law clause – in its purchase orders and language in those orders limiting a

contract to its own terms and conditions. Doc. 18.

Missing from both parties' analysis, however, is the first portion of Article 2601.

That paragraph states:

> An expression of acceptance of an offer to sell a movable thing suffices to
> form a contract of sale if there is agreement on the thing and the price, even
> though the acceptance contains terms additional to, or different from, the
> terms of the offer, **unless acceptance is made conditional on the offeror's
> acceptance of the additional or different terms.** Where the acceptance is
> not so conditioned, the additional or different terms are regarded as proposals
> for modification and must be accepted by the offeror in order to become a
> part of the contract.

La. Civ. Code art. 2601 (emphasis added). This paragraph mirrors the first section of UCC

2-207, which states:

> (1) A definite and seasonable expression of acceptance or a written
> confirmation which is sent within a reasonable time operates as an
> acceptance even though it states terms additional to or different from those
> offered or agreed upon, **unless acceptance is expressly made conditional
> on assent to the additional or different terms.**

U.C.C. § 2-207(1) (emphasis added). Courts interpreting the proviso in § 2-207(1) have

held that, where acceptance is made expressly conditional on assent to the additional or

different terms, no contract is formed as to those terms and it instead operates as a

counteroffer. *E.g.*, *JOM, Inc. v. Adell Plastics, Inc.*, 193 F.3d 47, 53 (1st Cir. 1999); *Dorton

v. Collins & Aikman Corp.*, 453 F.2d 1161, 1166 (6th Cir. 1972). Accordingly, even where

both parties are merchants, the additional or different terms do not become part of the

contract unless they are accepted. *Id.*; *see also Coastal & Native Plant Specialties, Inc. v.

Engineered Textile Prods., Inc.*, 139 F.Supp.2d 1326, 1332–37 (N.D. Fla. 2001). Article

2601 does not explicitly state what happens when "acceptance is made conditional on the offeror's acceptance of the additional or different terms" and case law on the statute is very limited. But the applicable treatise spells out that when the acceptance is made conditional, no contract is formed. 24 La. Civ. L. § 12:5. A fair reading does not allow that the limitation flies out the window when the parties are merchants. Instead the second paragraph of Article 2601 (supra) appears to only vary the last sentence of the first, which relates to the treatment of new or different terms in an acceptance not so conditioned. Meanwhile, Article 2602[3] – like UCC § 2-207(3) – salvages such situations by providing that a contract for sale may still be formed based on the parties' conduct and the terms on which their communications agree, even if their communications do not meet the traditional requirements of offer and acceptance.

In this case, all of the relevant forms appear to make acceptance conditional on assent to the general terms and conditions. Those terms and conditions differed with respect to dispute resolution, with MECS setting forth arbitration terms under New York law while Axiall Canada provided a venue and choice of law clause selecting Louisiana or Kentucky as the appropriate forum. The arbitration clause and venue/choice of law clause operate as additional terms in this matter **and** as different terms with respect to dispute resolution. They differ explicitly with regard to the choice of law and implicitly with regard to the

---

[3] That statute provides:

> A contract of sale of movables may be established by conduct of both parties that recognizes the existence of that contract even though the communications exchanged by them do not suffice to form a contract. In such a case the contract consists of those terms on which the communications of the parties agree, together with any applicable provisions of the suppletive law.

La. Civ. Code art. 2602.

manner of dispute resolution, with one clause mandating arbitration while the other envisions suit being filed in either forum. Both parties had expressly conditioned acceptance on the other's agreement to their terms. Regardless of which document formed the acceptance, there was no meeting of the minds as to the dispute resolution provisions and the parties could not have formed a contract based on these terms. Instead, the contract was formed under the terms of Article 2602. There is no basis under this statute, either, for finding that the parties had agreed to the arbitration clause through their communications or for drawing such a provision from the suppletive law.

Even in the event that the court's analysis is limited to the second paragraph of Article 2601, comment (g) to that article provides that "a term contained in an acceptance alters the offer materially when it is of such a nature that gives rise to the presumption that the offeror would not enter a contract with that term. An arbitration clause . . . [is an example] of such a term." In the event that the order acknowledgment is the acceptance, then the arbitration clause contained therein materially altered the terms of the agreement and no contract was formed with respect to that term. In the event that the purchase order is the acceptance, then the choice of law/venue clause implicitly rejects the arbitration clause and can likewise be seen as a material alteration of the offer's terms insofar as MECS expressly conditioned acceptance on agreement to this clause. Accordingly, the arbitration clause did not become part of the parties' agreement and the court has no grounds for staying or dismissing the matter and compelling arbitration.

### III.
#### CONCLUSION

For the reasons stated above, the Motion to Dismiss and Compel Arbitration [doc. 4] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on this 5th day of February, 2021.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**